UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

RICHARD MOORE,
*Prisoner Identification No. 334-644*,

    Plaintiff,

v.

SGT. JORDAN,
MAJ. FORD,
WARDEN JOHN WOLFE,
OFFICER BAH and
OFFICER OLACRE,

    Defendants.

Civil Action No. TDC-16-1741

## MEMORANDUM OPINION

Richard Moore, currently confined at Jessup Correctional Institution ("JCI") in Jessup, Maryland, filed this civil rights action alleging that Defendants failed to protect him from physical and sexual assault by another inmate. Pending before the Court are three motions: Moore's Motion for Clerk's Entry of Default as to Major Ford and Officer Olacre; the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Defendants former Warden John Wolfe ("Warden" or "Warden Wolfe"), Sergeant Jordan, and Officer Bah (collectively, the "State Defendants"); and Moore's Motion to Amend the Complaint. For the reasons set forth below, the Motion for Clerk's Entry of Default is denied; the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is granted; and the Motion to Amend the Complaint is denied.

## BACKGROUND

**I.  Facts**

On May 24, 2013, Moore was placed on administrative segregation pending an investigation into the possible smuggling of contraband into JCI. The investigator, Captain Harris, recommended that Moore be housed alone and have recreation alone while on administrative segregation. On July 22, 2013, Moore submitted a statement requesting placement in protective custody status for safety reasons because he owed an unpaid debt arising from his failed attempt to smuggle contraband into JCI. On July 24, 2013, prison officials decided that Moore would remain on administrative segregation pending transfer to protective custody status. On August 24, 2013, Moore was moved to a double occupancy cell but did not have a cellmate.

On August 30, 2014, Sergeant Jordan and Officer Bah escorted another inmate, Shawn Nolan, to Moore's housing unit and told Moore that Nolan would be his cellmate. Moore protested and informed the officers that he was "single cell and on protective custody." Sgt. Jordan Decl., Mot. Summ. J. Ex. 3 at 17, ECF No. 21-4. According to Moore, he was told that if he did not accept Nolan as his cellmate, he would be placed in disciplinary segregation. According to Sergeant Jordan, because Moore could not produce paperwork stating he was entitled to single cell status, and Sergeant Rice had informed Officer Bah that Moore was not on single cell status, he informed Moore that Nolan would be put into the cell with him.

Nolan, Moore's newly assigned cellmate, had recently been transferred from Western Correctional Institution where, according to Moore, Nolan had been on suicide watch. As soon as he arrived in the cell, Nolan complained repeatedly about not receiving his psychotropic medications. On September 1, 2014 at approximately 4:00 p.m., Nolan told Officer Olacre that

he "really needed his medication because he was having 'panic attacks' and would develop 'suicidal thoughts'" if they were not received soon. Moore Administrative Remedy Procedure Request ("ARP"), Mot. Summ. J. Ex. 4 at 29, ECF No. 21-5. Officer Olacre went off to investigate the matter and returned to assure Nolan that he would receive his medication later that day.

Approximately three hours later, a nurse delivered the medication to Nolan, who was nevertheless dissatisfied. Nolan then became verbally abusive to Moore, and his behavior escalated into a physical assault, including swinging at him and pinching and bruising his arms. Nolan later demanded that Moore perform oral sex on Nolan, or he would otherwise harm him. After first refusing, Moore complied with the demand. Nolan ejaculated in Moore's mouth and climbed back up to his bunk to sleep. Moore spit into the toilet and rinsed his mouth out several times. Moore asserts that he did not immediately report the assault because he did not think the officers on the 3:00 p.m. to 11:00 p.m. shift would take his claim seriously.

On the morning of September 2, 2014, Moore reported the assault to Major Ford verbally and by handing him an administrative remedy procedure request form ("ARP") with the "Emergency Request" box checked. On September 3, 2014, Nolan was removed from Moore's cell. Also on September 3, Detective Wright of the Intelligence and Investigative Division ("IID") of the Department of Public Safety and Correctional Services ("DPSCS") initiated an investigation into Moore's allegations. Moore, Nolan, and Sergeant Jordan were interviewed. Although Moore described the assault by Nolan, Nolan denied assaulting Moore or forcing him to perform oral sex. Sergeant Jordan asserted that Moore told him that if they put another inmate in his cell, he would write an ARP and "make something happen." Sgt. Jordan Decl. Moore's clothing and Nolan's clothing were collected and processed, Detective Wright took photographs

of the cell where the assault allegedly took place, and Moore was taken to Mercy Hospital for a Sexual Assault Forensic Medical Examination, which found no evidence of Nolan's bodily fluids in Moore's mouth. On the same date, Moore signed a complaint withdrawal form stating that he did not want to press criminal charges against Nolan. Detective Wright concluded, based on the facts, that "criminal charges [were] not warranted at this time." IID Report, Mot. Summ. J. Ex. 3 at 9.

Moore's September 2, 2014 ARP was received in the Warden's office on September 4, 2014 and denied by the Warden because the case had been referred to the IID for investigation. On September 30, 2014, Moore filed a second ARP about the same incident with additional details, which was denied by the Warden as repetitive of, or previously addressed by, the first. Moore appealed the denial of the two ARPs to the Commissioner of Correction, but his appeal was denied on the basis that the issue was being investigated by IID. Moore appealed that denial to the Inmate Grievance Office ("IGO"), and the matter was referred to an administrative law judge ("ALJ") for a hearing.

After a hearing on March 11, 2015, the ALJ found Moore to be a credible witness and noted that Moore had not had a cellmate the entire time he was assigned to administrative segregation pending protective custody until Nolan was placed in his cell. The only matter contested at the hearing by the prison representative was Moore's claim that he was entitled to a single cell, on which the prison representative presented documentation showing that because Moore was not in protective custody, but was in administrative segregation pending transfer to protective custody, Moore's occupancy status at the time of the incident was "double." IGO Report, Mot. Summ J. Ex. 4 at 9. The representative conceded, however, that as a matter of

practice, JCI attempted to house inmates who were awaiting placement on protective custody in single cells.

The ALJ found that:

> I conclude . . . that DOC personnel did not violate any applicable regulation or policy by the simple act of requiring [Moore] to accept a cellmate. Regardless of JCI practice, [Moore] was not *entitled* to be housed in a single cell.
>
> This does not end the inquiry, however. [Moore] has produced credible evidence, not refuted by the DOC, that Nolan was receiving psychotropic medication, which for some reason was delayed on September 1, 2014; that Noland had expressed suicidal ideation to the Tier Officer; that Nolan behaved erratically, alternating between aggression and crying; and that Nolan demanded that [Moore] perform a sexual act upon him. [Moore] testified, and I believed him, that he acceded to Nolan's demand out of fear for his personal safety. A reasonable inference is that [Moore's] compliance reduced Nolan's agitation and aggressiveness, perhaps giving Nolan's medications time to have an effect. It is undisputed that the DOC removed Nolan from [Moore's] cell by noon on September 3, 2014.
>
> Regardless, I find that, by placing Nolan, as opposed to some other inmate, in [Moore's] cell, the DOC placed [Moore] at risk of harm by an inmate in unstable mental and psychological condition, and that risk was realized. [Moore] endured a physical attack and submitted to Nolan's sexual demands in the interest of self-preservation. For that reason, I conclude that [Moore] should be awarded the amount of $150.00. I believe that this reasonably compensates [Moore] for his physical pain and for the unwelcome sexual contact.

Mot. Summ. J. Ex. 4, at 17. The Secretary of DPSCS affirmed the ALJ's proposed decision and order, including the determination that Moore should receive $150 in damages.

## II. Procedural History

On May 31, 2016, Moore filed the Complaint in this action in which he asserted the following claims: (1) Sergeant Jordan, accompanied by Officer Bah, forced Moore to accept a cellmate, even though he was on protective custody, and as a result Moore was sexually and physically assaulted by Nolan; (2) Officer Olacre was aware that Nolan was mentally distressed and had expressed intent to do harm but failed to respond properly to prevent the assault; (3)

5

Major Ford, after being informed of Nolan's assault through an emergency ARP, failed to respond properly; and (4) Warden Wolfe is liable because he was directly responsible for all matters within JCI, including the conduct of prison staff and the welfare of all inmates. The Litigation Coordinator for JCI accepted service on behalf of Defendants Warden Wolfe, Sergeant Jordan, and Officer Bah, but did not accept service for Major Ford, who retired on May 1, 2016, or Officer Olacre, who is not listed as an employee at JCI. On November 30, 2016, Moore filed a Motion for Clerk's Entry of Default as to Major Ford and Officer Olacre. On January 13, 2017, pursuant to the Court's August 16, 2016 Order, Warden Wolfe, Sergeant Jordan, and Officer Bah filed the present Motion. On July 12, 2017, Moore filed correspondence construed as a Motion to Amend the Complaint.

## DISCUSSION

The State Defendants seek dismissal of the Complaint or summary judgment in their favor on several grounds, including that: (1) any claim that Sergeant Jordan threatened Moore by requiring him to accept a cellmate or be placed on disciplinary segregation does not state a claim for a constitutional violation under § 1983; (2) any claim that Defendants violated their own policies, procedures, rules, or regulations, or that they violated state law or a regulation, does not state a claim for a constitutional violation under § 1983; (3) Warden Wolfe is not liable because there is no vicarious liability under § 1983, and he was not personally involved in the alleged failure to protect Moore; (4) Sergeant Jordan and Officer Bah are not liable because they did not act with deliberate indifference to Moore's safety; and (5) Warden Wolfe, Sergeant Jordan, and Officer Bah are entitled to qualified immunity.[1]

---

[1] The Court does not construe the Complaint to allege a claim under § 1983 on the basis that: (1) Sergeant Jordan verbally threatened Moore to accept Nolan as a cellmate; or (2) Defendants

6

# I. Legal Standards

## A. Motion to Dismiss

The Warden's argument based on the failure to allege that he had any personal involvement in the alleged constitutional violations is properly construed as the subject of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## B. Motion for Summary Judgment

Because the State Defendants have submitted evidence for the Court's review, and because Moore has not requested an opportunity for discovery, the remaining arguments are construed as asserted pursuant to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most

---

violated their own policies, procedures, rules, or regulations, or that they violated a state law or regulation. Accordingly, the Court will not address Defendants' arguments as to these issues.

favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. Motion for Clerk's Entry of Default

On November 30, 2016, Moore filed a "Declaration for Entry of Default," which the Court construes as a Motion for Clerk's Entry of Default as to Major Ford and Officer Olacre. This motion must be denied. The Litigation Coordinator for JCI did not accept service for Major Ford, who retired May 1, 2016, or Officer Olacre, who is not listed in prison records as an employee of JCI. Because neither Major Ford nor Officer Olacre was served with the Complaint, the Motion for Clerk's Entry of Default is denied.

## III. Motion to Dismiss or for Summary Judgment

### A. Warden Wolfe

The Warden seeks dismissal of the claims against him because the Complaint does not allege that he had any personal role in the activities underlying Moore's claims. Rather, Moore frames the Warden's liability as based on the allegation that he "is directly responsible for all matters within JCI including Staff/Officers properly following procedures and the welfare of all inmates including Plaintiff." Compl. 3, ECF No. 1.

8

A state official may not be held liable under 42 U.S.C. § 1983 unless it is "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th. Cir. 1977); *see also Monell v. Dep't of Social Servs of New York*, 436 U.S. 658, 690-92 (1978). There is no vicarious liability (*respondeat superior*) in § 1983 cases against government officials for the acts of their subordinates. *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *Vinnedge*, 550 F.2d at 928. In order for a supervising official to be held liable under § 1983, a plaintiff must establish that: (1) the supervisor knew that the subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury"; (2) the supervisor's "response showed deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) there was "an affirmative causal link" between the supervisor's "inaction and the constitutional injury." *King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)).

Here, Moore does not allege that the Warden was personally involved in the failure to protect him from sexual assault by Nolan. Accordingly, the claims against the Warden are dismissed.

### B. Sergeant Jordan and Officer Bah

In the Complaint, Moore asserts that Sergeant Jordan and Officer Bah violated his constitutional rights by forcing Moore to accept Nolan as a cellmate because the result of that

9

"forced housing" was that Nolan sexually and physically assaulted Moore. Ordinarily, placing an inmate in a cell with another inmate does not violate the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 347-50 (1981). Moreover, the evidence reveals that Moore, who was not in protective custody yet but was instead in administrative segregation pending transfer to protective custody, was not even in a single cell status at the time that Nolan was placed in his cell. Thus, there is no potential constitutional claim arising from the mere addition of Nolan to Moore's cell. The constitutional claim, if any, is that in placing Nolan in the cell, Sergeant Jordan and Officer Bah acted with deliberate indifference to Moore's health and safety, in violation of the Eighth Amendment to the United States Constitution.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of inmates," including protecting them "from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes*, 452 U.S. at 347). To prove a prison official's liability for failing to protect them from other inmates, prisoner plaintiffs must satisfy a two-part inquiry, consisting of objective and subjective prongs. *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

For the objective prong, the prisoner "'must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury' or a substantial risk thereof." *Id.* (quoting *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014)). This inquiry "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Raynor*, 817 F.3d at 127 (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).

To meet the subjective prong, a plaintiff must establish that the defendant had a "sufficiently culpable state of mind," consisting of "deliberate indifference to inmate health and safety." *Raynor*, 817 F.3d at 127-28 (quoting *Farmer*, 511 U.S. at 834). To establish such deliberate indifference requires a showing that the official actually "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *Raynor*, 817 F.3d at 128. A "factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. A prison official aware of such a risk to an inmate fulfills Eighth Amendment obligations by taking reasonable steps to avert harm, even if the harm still occurs. *Id.* at 844-45. "In failure to protect cases, 'prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm.'" *Raynor*, 817 F.3d at 128 (quoting *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995)). Refusing to take any action to stop an ongoing assault, however, can amount to deliberate indifference. *Id.*

Although the State Defendants have submitted evidence to cast some doubt on Moore's account of the assault, including the lack of forensic evidence and the claim that Moore threatened to file an ARP if he was forced to accept a cellmate, Moore's account of the assault, which was specifically found to be credible by the ALJ, is sufficient to establish a genuine issue of material fact whether Nolan physically and sexually assaulted Moore. There can be no dispute that being forced into a sex act would satisfy the objective prong of a "serious or significant physical or emotional injury." *Raynor*, 817 F.3d at 127. The key issue, therefore, is whether the subjective prong has been satisfied in that Sergeant Jordan and Officer Bah had sufficient knowledge of the risk posed by Nolan that they knew of and disregarded an "excessive

11

risk to inmate health or safety" when they placed him in a cell with Moore. *Farmer*, 511 U.S. at 837; *Raynor*, 817 F.3d at 128.

Here, however, Moore has not even alleged, let alone presented evidence to establish, that Sergeant Jordan and Officer Bah knew that Nolan presented a safety risk to Moore. His allegations regarding Sergeant Jordan and Officer Bah were limited to their decision to require Moore to accept Nolan as a cellmate or face a disciplinary sanction. At no time has Moore alleged that these correctional officers knew that Nolan had a mental health condition, that he had not received his medication, or that he might be physically violent against Moore or himself. Indeed, according to the Complaint, Sergeant Jordan and Officer Bah placed Nolan in Moore's cell at 10:00 a.m. on August 30, 2014, before Nolan allegedly complained about not receiving his psychiatric medication. It was only on September 1, 2014, two days later, that Nolan allegedly told Officer Olacre that he would kill himself and cause bodily harm if he did not receive his medication. Notably, JCI had received no previous complaints by other inmates against Nolan. Where there is neither an allegation nor evidence showing that Sergeant Jordan and Officer Bah were aware that Nolan presented a physical threat to Moore at the time that they placed him in Moore's cell, Moore has not stated a plausible claim that Sergeant Jordan or Officer Bah acted with deliberate indifference to Moore's safety. Accordingly, the Motion is granted as to Sergeant Jordan and Officer Bah. The Court therefore need not, and does not, address the qualified immunity claim.

C. **Other Officers**

Although the Motion was not filed on behalf of Major Ford or Officer Olacre, the Court is required to review the claims of an indigent, *pro se* prisoner against government officials to determine whether they state a plausible claim for relief. *See* 28 U.S.C. §§ 1915, 1915A (2012).

Upon such a review, the claims against Major Ford will be dismissed. According to the Complaint, Major Ford had no involvement with the alleged incident until he received Moore's ARP on September 2, 2014. By that time, Nolan's assault on Moore had ended, and there is no allegation that it was renewed again before Nolan was removed from the cell on September 3, 2014. Even assuming that Major Ford could have arranged for Nolan to be removed from the cell earlier, the objective prong of an Eighth Amendment claim has not been met, because any alleged delay did not expose Moore to a serious or significant injury. Accordingly, the claims against Major Ford will be dismissed without any need to seek service upon him.

The Court, however, does not dismiss the claims against Officer Olacre at this time. Where Moore has alleged that Nolan told Officer Olacre that he intended to "cause bodily harm" but was not immediately removed from Moore's cell, and the record to date does not contain any records relating to Nolan's mental health condition at the time of this incident, the Court cannot conclude that there is no plausible claim against Officer Olacre. Compl. 1. Because counsel for the State Defendants has asserted that there is no current employee of JCI named Officer Olacre, the Court will direct the Attorney General to review JCI personnel records to identify the tier officer on duty on September 1, 2014 during the 3:00 to 11:00 p.m. shift, identified by Moore as Officer Olacre, who was present at Moore's cell with Nolan, heard Nolan's complaints regarding his lack of medication, and arranged to have Nolan's medication delivered that evening. The Attorney General shall file a report, within 30 days, on whether the identity of the officer has been established and whether, if the officer is a current employee of JCI or any other state correctional facility, counsel will accept service on behalf of the officer. In the event that the officer is not such an employee, the Court will direct the U.S. Marshal to effect service upon that officer.

## IV. Motion to Amend the Complaint

Moore has filed correspondence requesting leave to amend his Complaint to clarify that he is suing Defendants in both their official and individual capacities and to add a claim that Defendants violated the Prison Rape Elimination Act ("PREA"), 42 U.S.C. §§ 15601-15609 (2012). Federal Rule of Civil Procedure 15(a) requires that leave to file an amended complaint should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "A motion to amend should be denied 'only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)). To determine whether a proposed Amended Complaint would be futile, the Court reviews the revised complaint under the standard used to evaluate a motion to dismiss for failure to state a claim. *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011); *see supra* Part I.A.

First, as discussed above, the Court has construed the Complaint as asserting claims against Defendants in their individual capacities. To the extent that Moore seeks to add claims against Defendants in their official capacities, such claims would be futile. Because a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," state officials are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Second, Moore's PREA claim is not cognizable. "Section 1983 itself creates no rights," but rather "provides a method for vindicating federal rights elsewhere conferred." *Kendall v. City of Chesapeake*, 174 F.3d 437, 440 (4th Cir. 1999) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)); *accord Doe v. Broderick*, 225 F.3d 440, 447 (4th Cir. 2000). "[W]here the text and

structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 286 (2002). Here, Congress intended with the enactment of the PREA "[t]o provide for the analysis of the incidence and effects of prison rape in Federal, State, and local institutions and to provide information, resources, recommendations, and funding to protect individuals from prison rape." PREA, Pub. L. No. 108-79, 117 Stat. 972 (2003). Nothing in the PREA suggests that Congress intended to create a private right of action for prisoners to sue for non-compliance. *See Williams v. Dovey*, No. DKC-15-1891, 2016 WL 810707, at *7 (D. Md. Mar. 2, 2016) (citing cases). The proposed addition of a PREA claim would therefore be futile. Accordingly, the Motion to Amend the Complaint will be denied.

## CONCLUSION

For the foregoing reasons, Moore's Motion for Clerk's Entry of Default is denied; Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is granted; and Moore's Motion to Amend the Complaint is denied. A separate Order shall issue.

Date: August 23, 2017

THEODORE D. CHUANG
United States District Judge