# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| RICHARD MOORE, *Prisoner Identification No. 334644*,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER HERBERT KARANI and OFFICER KOKOU OKUI,<br><br>Defendants. | Civil Action No. TDC-16-1741 |

## MEMORANDUM OPINION

Plaintiff Richard Moore, an inmate presently confined at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed this civil rights action alleging that Defendants failed to protect him from a physical and sexual assault in September 2015 by another inmate while he was housed at Jessup Correctional Institution ("JCI") in Jessup, Maryland. Pending before the Court are two motions. Defendants Herbert Karani and Kokou Okui, correctional officers at JCI, have filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Moore has also filed a Motion for Summary Judgment, which is opposed by Defendants. No hearing is necessary to resolve the motions. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is GRANTED. Moore's Motion for Summary Judgment is DENIED.

## BACKGROUND

The core factual allegations are set forth in the Court's August 23, 2017 Memorandum Opinion granting the Motion to Dismiss, or in the Alternative, Motion for Summary Judgment,

filed by prior Defendants former Warden John Wolfe, Sergeant Jordan, Major Ford, and Officer Bah, and are incorporated by reference here. *Moore v. Jordan*, No. 16-1741, 2017 WL 3671167, at *1–3 (D. Md. Aug. 23, 2017). The following additional facts are specifically relevant to the pending motions.

On August 30, 2014, Moore was housed in administrative segregation awaiting transfer to protective custody. Another inmate, Shawn Nolan, was placed in his cell over the objection of Moore, who believed he had a right to single cell because he was to be transferred to protective custody. Nolan had recently been transferred from Western Correctional Institution where, according to Moore, Nolan had been on suicide watch. As soon as he arrived in the cell, Nolan complained repeatedly about not receiving his psychotropic medications. On September 1, 2014 at approximately 4:00 p.m., Nolan told Officer Okui that he "really needed his medication because he was having 'panic attacks' and would develop 'suicidal thoughts'" if they were not received soon. Moore Administrative Remedy Procedure Req., Defs.' First Mot. Summ. J. Ex. 4 at 29, ECF No. 21-5. Officer Okui went off to investigate the matter and returned to assure Nolan that he would receive his medication later that day. Approximately three hours later, a nurse delivered the medication to Nolan, who was nevertheless dissatisfied. Nolan then became verbally abusive to Moore, and his behavior escalated into a physical assault, including swinging at him and pinching and bruising his arms. Nolan later demanded that Moore perform oral sex on Nolan, or he would otherwise harm him. After first refusing, Moore complied with the demand. Nolan ejaculated in Moore's mouth and climbed back up to his bunk to sleep. Moore spit into the toilet and rinsed his mouth out several times. Moore asserts that he did not immediately report the assault because he did not think the officers on the 3:00 p.m. to 11:00 p.m. shift would take his claim seriously.

On the morning of September 2, 2014, Moore reported the assault. On September 3, 2014, Nolan was removed from Moore's cell. Also on September 3, the Intelligence and Investigative Division ("IID") of the Maryland Department of Public Safety and Correctional Services ("DPSCS") initiated an investigation into Moore's allegations. The investigation included witness interviews and a Sexual Assault Forensic Medical Examination of Moore, which found no evidence of Nolan's bodily fluids in Moore's mouth. After Moore signed a complaint withdrawal form stating that he did not want to press criminal charges against Nolan, the IID concluded that "criminal charges [were] not warranted at this time." IID Report, Defs.' First Mot. Summ. J. Ex. 3 at 9, ECF No. 21-4. Meanwhile Moore had filed two administrative remedy procedure grievances ("ARP") relating to the incident. Although the ARPs were denied because of the pending IID investigation, Moore appealed the denials to the Inmate Grievance Office, which referred the matter to an administrative law judge ("ALJ") for a hearing on March 11, 2015. Although the ALJ rejected Moore's claim that the transfer of Nolan into his cell violated prison rules because he was entitled to single cell status at the time of the incident, the ALJ found that Moore had been a credible witness and that:

> [Moore] has produced credible evidence, not refuted by the DOC, that Nolan was receiving psychotropic medication, which for some reason was delayed on September 1, 2014; that Noland had expressed suicidal ideation to the Tier Officer; that Nolan behaved erratically, alternating between aggression and crying; and that Nolan demanded that [Moore] perform a sexual act upon him. [Moore] testified, and I believed him, that he acceded to Nolan's demand out of fear for his personal safety. A reasonable inference is that [Moore's] compliance reduced Nolan's agitation and aggressiveness, perhaps giving Nolan's medications time to have an effect. It is undisputed that the DOC removed Nolan from [Moore's] cell by noon on September 3, 2014.
>
> Regardless, I find that, by placing Nolan, as opposed to some other inmate, in [Moore's] cell, the DOC placed [Moore] at risk of harm by an inmate in unstable mental and psychological condition, and that risk was realized. [Moore] endured a physical attack and submitted to Nolan's sexual demands in the interest of self-preservation. For that reason, I conclude that [Moore] should be awarded the

> amount of $150.00. I believe that this reasonably compensates [Moore] for his physical pain and for the unwelcome sexual contact.

ALJ Op., Defs.' First Mot. Summ. J. Ex. 4 at 17, ECF No. 21-5. The Secretary of DPSCS affirmed the ALJ's proposed decision and order, including the determination that Moore should receive $150 in damages.

In its prior Memorandum Opinion, this Court granted Defendants' first Motion to Dismiss or, in the Alternative, for Summary Judgment ("the First Motion"), ECF No. 21, on the grounds that Warden John Wolfe and Major Ford had no involvement in the alleged sexual assault either at all or until after it had occurred, and that Sergeant Jordan and Officer Bah did not have the subjective knowledge of the safety risk that Nolan posed to Moore, as is required under the Eighth Amendment. *Moore*, 2017 WL 3671167, at *5–6. The only issue remaining in this case is Moore's claim that the tier officer at JCI, originally identified in the Complaint as "Officer Olacre," violated Moore's Eighth Amendment rights because he was aware that Nolan "intended to kill himself and cause bodily harm if . . . Nolan didn't receive his medication," yet failed to remove Nolan from Moore's cell before the assault. Compl. 4, ECF No. 1. Because Moore misidentified the tier officer, no direct response was provided for this allegation in the First Motion. After the Court directed counsel for Defendants to provide the correct name or names of the officers assigned as tier officers during the relevant time period, Defendants Karani and Okui were identified from personnel logs as the officers assigned to Moore's tier on September 1, 2014. Moore now contends that Okui is the "Officer Olacre" referenced in the Complaint.

In declarations submitted in support of the pending Motion, Okui and Karani have each asserted that he does not remember Moore or Nolan, that he does not recall the September 1, 2014 incident, and that he does not remember either inmate advising that Nolan was suicidal. Both officers further state that had Nolan reported that he was suicidal, he would have immediately

arranged for medical or psychological staff to examine him, and that if Moore had reported that he had been threatened by Nolan or was otherwise in danger from Nolan, he would have removed Nolan from the cell immediately.

Although Moore received notification by the Court that Defendants had moved for summary judgment and he entitled his responsive filing as a Motion for Summary Judgment, he did not submit an affidavit, declaration, or any other evidence. In his Motion, however, Moore states that Nolan told Okui that he was becoming "suicidal" and having "panic attacks" because he was not receiving his medications. Pl.'s Mot. Summ. J. 1, ECF No. 55. He further states that Okui listened to the threats, investigated the "medication situation" and returned to tell Nolan that he would receive his medications soon. *Id.* Moore then asserts that "When the meds arrived, Inmate Nolan proclaimed that they were the wrong kind, Inmate Nolan zapped out screaming and banging his head on the cell door. Ofc. Okui, observed and just left, no action. Inmate Nolan proceeded to viciously physically assault and sexually assault the Plaintiff." *Id.* Moore also claims that during the administrative hearing on his claim, the institutional representative conceded that these facts were true and thus requests that the court consider the ALJ's findings.

## DISCUSSION

In their Motion, Defendants seek dismissal or summary judgment in their favor on the grounds that the Complaint fails to state a plausible claim against Defendants, there are no genuine disputes of material fact such that Defendants are entitled to judgment as a matter of law, and Defendants are entitled to qualified immunity. In his Motion, Moore seeks summary judgment in his favor on his Eighth Amendment claim or, alternatively, appointment of counsel to represent him if summary judgment is denied.

I. **Legal Standard**

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

When a moving party submits affidavits or other evidence for the Court's consideration on a motion to dismiss, the Court ordinarily may not consider such materials unless the motion is treated as one for summary judgment. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or submit an equivalent request, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002).

Here, Moore was put on notice that the Court would consider outside materials from the title of Defendants' Motion and the Court's standard notice to self-represented parties explaining summary judgment and Federal Rule of Civil Procedure 56. ECF No. 54. Moreover, Moore's submission of his own Motion for Summary Judgment establishes that he was aware that the Court might consider granting summary judgment at this time. Notably, despite the Court's notice informing Moore of Rule 56(d), Moore has submitted neither a Rule 56(d) affidavit nor an equivalent request for discovery. Accordingly, the Court may construe Defendants' Motion as seeking summary judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## II. Officer Karani

Although Officer Karani was added as a Defendant in this case because he worked as a tier officer for Moore's cell on the date of the assault, Moore now asserts that it was Officer Okui who

he mistakenly identified as Officer Olacre in the Complaint. There are no separate allegations in the Complaint or the Motion relating to Karani, by name or description. Generally, liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Since Moore does not assert that Karani participated in the alleged violation of his constitutional rights, any claim against Karani will be dismissed.

### III. Officer Okui

In asserting a claim under the Eighth Amendment, Moore is effectively claiming that Officer Okui acted with deliberate indifference to inmate health and safety when he left Nolan in the cell with Moore. The right to be free from cruel and unusual punishment includes the right to be protected from a substantial risk of serious harm at the hands of other inmates. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015). Accordingly, the "Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 832). Those duties include maintaining "reasonable measures to guarantee the safety of the inmates." *Id.* (quoting *Farmer*, 511 U.S. at 832). However, "not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Rather, to demonstrate a violation of his Eighth Amendment rights, a plaintiff must satisfy a two-part inquiry that includes both objective and subjective components. *See Raynor*, 817 F.3d at 127.

First, to satisfy the objective inquiry, the plaintiff "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or a substantial risk of such harm. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014); *see also Farmer*, 511

U.S. at 834. The objective inquiry requires the Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). To satisfy the subjective component of the test, Plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety, in that the prison officials both were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that they actually drew that inference. *Id.* at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk in the usual ways, including inference from circumstantial evidence" so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Raynor*, 817 F.3d at 128 (quoting *Farmer*, 511 U.S. at 842). Actual knowledge of a substantial risk does not alone impose liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844; *Nelson v. Henthorn*, 677 F. App'x 823, 826 (4th Cir. 2017) (holding that a correctional officer did not violate the Eighth Amendment because he "took reasonable measures to abate" a threat of harm to an inmate and "reasonably concluded" that his solution "was sufficient" based on the information presented to him).

Although there is no dispute that sexual assault presents an objectively serious risk to inmate health and safety, Moore has not provided sufficient evidence to support a finding that Okui subjectively knew that Moore faced such a risk and disregarded it. In the Complaint, Moore asserts that Officer Olacre, now believed to be Officer Okui, heard Nolan state that he might hurt himself or cause bodily harm if he did not receive his medication. Moore further asserts, however, that

9

Okui then went to check on Nolan's medication and reported back that it would be delivered soon. Such a response would refute, rather than support, the claim that he acted with deliberate indifference to a known risk to inmate safety. Where Okui responded reasonably to the risk Nolan posed by promptly arranging for delivery of his medication and reasonably did not perceive that Nolan would still pose a risk after receiving the medication, he did not act with deliberate indifference, even though Nolan later harmed Moore. *See Farmer,* 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."); *Nelson,* 677 F. App'x at 827. The allegations in the Complaint and the facts in the record do not demonstrate the "sufficiently culpable state of mind" necessary to establish an Eighth Amendment violation for failure to protect an inmate from a known safety risk. *See Farmer,* 511 U.S. at 834.

With his Motion, Moore provides no affidavit, declaration, or other evidence in support of his Eighth Amendment claim. However, in his brief, Moore for the first time asserts that Okui was present when the medication was delivered, observed Nolan react angrily because he believed he had received the wrong medication, yet took no action. As a general rule, when one party files a motion for summary judgment, the non-moving party cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like respond to the motion. *Celotex,* 477 U.S. at 324; *Kipps v. Ewell,* 538 F.2d 564, 566 (4th Cir. 1976). Here, Moore was notified by the Court of the need to respond to Defendants' Motion and was provided with Federal Rules of Civil Procedure 12 and 56, including the requirement in Rule 56(c) that factual assertions be supported by affidavits, declarations, or other record evidence. ECF No. 54. Moore's unattributed assertion, offered in a brief rather than an affidavit or declaration, and not referenced in any exhibit, is not properly considered on a motion for summary judgment. *See Bouchat,* 346 F.3d at 522.

Even if the claim could be liberally construed as a sworn statement, the Court concludes that it would not create a genuine dispute of material fact such that a reasonable jury could find in his favor. As noted by Defendants, Moore had given multiple accounts of the incident in the past without claiming that Okui was present when Nolan rejected the medication. In his ARPs, Moore states that Officer Olacre "[m]ade it his mission to investigate inmate Nolan's Med situation and returned to assure him the Medical Dept. will provide them later in the day" and that a nurse, not a correctional officer, later delivered them to Nolan. Defs.' First Mot. Summ. J. Ex. 4 at 26–29. In the IID report including an account of an interview with Moore, only a nurse is referenced as present when Nolan began yelling. IID Report, Defs.' First Mot. Summ. J. Ex. 3 at 8.

After Moore testified in the administrative proceeding, the ALJ found that he had testified credibly and made the following findings of fact:

> 7. On the afternoon of September 1, 2014, Nolan told Officer Olacre [now identified as Officer Okui], the Tier Officer, that he intended to hurt himself if he did not receive his psychiatric medications.
>
> 8. Ofc. Olacre contacted the Medical Department and was advised that the medications would be provided that evening.
>
> 9. Later on September 1, 2014, a nurse delivered a cup of pills to Nolan. Nolan became agitated and lashed out at the nurse, who walked away. Nolan then began verbally abusing [Moore], struck [Moore] about the arms, bruising them, and eventually demanded that [Moore] perform oral sex upon him.

ALJ Op., Defs.' First Mot. Summ. J. Ex. 4 at 7. The ALJ noted in her decision that the institutional representative conceded that Moore's account of the incident was accurate, but disputed Moore's claim that he was not supposed to have a cellmate. *Id.* at 9. Finally, in the Complaint, Moore made no mention of Okui's presence, or the presence of any other correctional officer, when the medication was delivered. Rather, he referred only to a "nurse" delivering the medication and witnessing an outburst by Nolan. Compl. ¶ 8.

11

Thus, at no point in the administrative proceedings or his Complaint did Moore claim that Okui witnessed Nolan's reaction to receiving the medication from the nurse but did nothing to intervene. Rather, his present claim that Okui was so present appears to contradict his testimony before the ALJ and his other prior statements. Moore cannot establish a genuine issue of fact sufficient to avoid summary judgment "simply by contradicting" his previous testimony and statements "without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806–07 (1999); *see Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) (holding that a plaintiff's self-serving affidavit that contradicted his own prior testimony did not create a genuine issue of material fact). Under these circumstances, the Court concludes that Moore's belated, unsworn, and contradictory claim that Okui was aware of but failed to react to Nolan's outburst would not support a finding by reasonable jury that Okui acted with deliberate indifference to a serious risk to inmate safety.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment will be GRANTED. Moore's Motion for Summary Judgment will be DENIED. A separate Order shall issue.

Date: January 10, 2019

THEODORE D. CHUANG
United States District Judge